**SO ORDERED.**

**SIGNED this 12th day of October, 2006.**

_____
**LARRY E. KELLY**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**
_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JAMES DAVID JOHNSON,** | § | **CASE NO. 05-31925-LK** |
| | § | |
| Debtor. | § | **Chapter 7** |

------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| **WESTERN BANK ALAMOGORDO,** | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | **ADV. NO. 05-3052** |
| | § | |
| **JAMES DAVID JOHNSON,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION REGARDING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

       The Plaintiff in this case, Western Bank Almagordo ("Plaintiff" or "Bank" or "WBA")
filed a Motion for Summary Judgment and the Defendant, James David Johnson ("Defendant" or
"Debtor") has responded.  The Plaintiff replied to that response and the Defendant, after
receiving leave to do so, filed a supplemental response.  No oral argument on the Motion was set,

the court deciding instead that it would rule on the pleadings and affidavits.  After having

reviewed those papers and the file and record in the case, and pursuant to Fed.R.Bankr.P. 7052,

the court now makes the following findings of fact and conclusions of law in support of its Order

Granting Motion for Summary Judgment, entered contemporaneously herewith.

<u>SUMMARY JUDGMENT STANDARDS</u>

In an adversary proceeding, summary judgment is appropriate if the moving party can

"show that there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(c); **Anderson v. Liberty Lobby, Inc.,** 477 U.S.

242, 248 (1986); **Bailey v. United Airlines**, 279 F.3d 194, 198 (3d Cir. 2002).  An issue is

material if its resolution could affect the outcome of the action.  **Perez v. United States**, 312

F.3d 191, 193 (5th Cir. 2002), *citing* **Anderson**, 477 U.S. at 248.  In deciding whether a fact

issue has been created, the court must view the facts and the inferences to be drawn therefrom in

the light most favorable to the nonmoving party.  *See* **Perez**, 312 F.3d at 193, *citing* **Olabisiomo-**

**tosho v. City of Houston**, 185 F.3d 521, 525 (5th Cir. 1999); *see also* **Matsushita Elec. Indus.**

**Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 587 (1986) (when ruling on a motion for

summary judgment, the court must view the evidence in the light most favorable to the

non-movant).  In other words, the court must accept the non-movant's version of the facts as true

and resolve conflicts in the non-movant's favor.  *See* **Big Apple BMW, Inc. v. BMW of North**

**America, Inc.**, 974 F.2d 1358, 1363 (3d Cir. 1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues

of material fact.  *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986).  Once the movant

has done so, however, the non-moving party cannot simply rest on its pleadings.  *See*

Fed.R.Civ.P. 56(e).  A non-moving party "will not be able to withstand a motion for summary

judgment merely by making allegations; rather, the party opposing the motion must go beyond its

pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to

interrogatories showing there is a genuine issue for trial."  **In re Ikon Office Solutions, Inc.**, 277

F.3d 658, 666 (3d Cir. 2002).  This requirement is not satisfied by "speculation, conjecture, or

fantasy"; it requires sufficient probative evidence to allow a finding in its favor, assuming the

evidence is established at trial.  **Wilson v. International Business Machines Corp.**, 62 F.3d

237, 241 (8th Cir. 1995); *see also* **Brown v. City of Houston, Tex**., 2003 WL 21517366, *2 (5th

Cir.) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."), *citing* **Bridgmon v. Array Systems Corporation**, 325 F.3d 572, 577 (5th Cir. 2003) *and* **Hugh Symons Group, PLC v. Motorola, Inc.**, 292 F.3d 466, 468 (5th Cir. 2002). In other words, if "the evidence submitted by the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted because '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine" issue for trial.'" **Hawking v. Ford Motor Credit Co.**, 210 F.3d 540, 545 (5th Cir. 2000).

## DISCUSSION AND ANALYSIS

The court has carefully reviewed and considered the affidavits of Paul Kienzle III and the Defendant, along with the exhibits attached to them. It has also taken judicial notice of the Debtor's schedules filed in this bankruptcy case, specifically Schedule F, which is the Debtors' list of unsecured creditors. This Schedule lists the Plaintiff, Western Bank of Alamogordo, and its claim is scheduled by the Debtor as liquidated, noncontingent and undisputed. It is noteworthy that this is the ONLY creditor listed by the Debtor in his bankruptcy case.

The Bank's Complaint in this adversary proceeding generally alleges, and it argues in the Motion for Summary Judgment, that the Debtor entered into a settlement agreement and a stipulated judgment with the Bank, and that these documents alone compel a finding, under the principles of collateral estoppel and/or the Rooker-Feldman Doctrine, that the debt is nondischargeable under § 523(a)(2)(A) and/or (a)(6). Debtor answered in the suit that the settlement agreement was entered into under duress and is thus unenforceable. He also raised in his answer issues of usury, contributory negligence, estoppel and laches as affirmative defenses to the claim of the Bank. With respect to the Motion for Summary Judgment, he argues that for various reasons collateral estoppel and the Rooker-Feldman Doctrine do not apply here, that his affirmative defense of duress bars the relief requested by the Bank,[1] and that the Bank is also not entitled to summary judgment because a material fact–the amount of the Bank's claim–is still at issue, the Bank having "neither requested nor established an amount to be discharged." Defendant's Response to Plaintiff's Motion for Summary Judgment, p. 19. .

---

[1] With respect to the Motion for Summary Judgment, the Debtor does not argue or present any evidence on his other defenses.

After carefully considering the arguments espoused by the parties in their various pleadings, including the Motion for Summary Judgment, Debtor's Response to the Motion for Summary Judgment, the Motion of Western Bank-Alamogordo for leave to file exhibit in support of the Motion for Summary Judgment, the Order granting same, the Response of the Debtor to the Motion for Summary Judgment, the Response of the Bank to the Debtor's Response, the Debtor's Supplemental Response, and the exhibits attached to certain of the above pleadings, the court now makes the following findings of fact and conclusions of law.

## Background

The following facts appear to be not in dispute:

1.      On or about October 21, 1998, the Bank began to floor plan the used car inventory of Buy Rite Motors, a New Mexico general partnership of which Debtor and Robert W. Freemyer were partners.  In connection with that floor planning, Buy Rite Motors executed one note to the Bank in the amount of $203,020.00 ("Note 1") and another note in favor of Bank in the amount of $179,330.37 ("Note 2").  The Bank was granted a lien on some real estate and a security interest in some personal property, including inventory, parts, equipment and the "floor plan of used car for resale" to secure Note 1.  The Debtor and Freemyer each personally guaranteed Buy Rite Motors' debt to the Bank, limited to the principal amount of Note 1 plus attorneys fees and certain other charges.

2.      Under the floor plan arrangement, the Bank held the title to each vehicle offered for sale by Buy Rite Motors, and upon the sale of the vehicle Buy Rite Motors was required to pay the purchase price to the Bank in exchange for release of the title.

3.      In late 1999, Buy Rite began to sell vehicles "out of trust"–i.e., it was not remitting the sale proceeds of each vehicle to the Bank as those proceeds were received.  The Debtor contacted an officer of the Bank and spoke about the problem, and soon after that requested a meeting with the Bank's President to address the amount that Buy Rite had failed to pay the Bank.  No agreement was reached at that meeting regarding whether and how the amount not paid as required would be repaid.

4.      Shortly after that meeting, the Bank filed a criminal complaint against the Debtor and others associated with Buy Rite Motors.

5.      On or about April 27, 2000, the Bank filed its "Complaint for Money Owed, Real Property Foreclosure, Personal Property Foreclosure, Appointment of Special Receiver, Conversion, Fraud, Racketeering, Civil Conspiracy, Unfair Practices, Breach of the Duty of Loyalty, Negligence, and Breach of Contract" (the "State Court Complaint") against Buy Rite Motors, the Debtor, and others in the Twelfth Judicial District, Otero County, New Mexico (the "State Court Suit").

6.      On or about November 15, 2001, the Bank, Buy Rite Motors, the Debtor, and others entered into a settlement agreement (the "Settlement Agreement").  The Settlement Agreement provided, in part:

> **NONDISCHARGEABILITY**: Buy Rite, Johnson, and Freemyer admit liability to WBA and causing damages and loss to WBA of WBA's property while it was deposited on WBA's premises in the amount of the Debt resulting directly from their commission of false pretenses, false representations, actual fraud and conversion and willful and malicious injury to WBA's property and are thus indebted to WBA under Counts VIII and IX of the Complaint.  Buy Rite, Johnson, and Freemyer admit that the Debt was incurred and obtained by their knowing, fraudulent, bad faith, and positive commission of false pretenses, false representations, and actual fraud with intent to deceive WBA as contemplated by 11 U.S.C. § 523(a)(2)(A) and admit that WBA justifiably relied on that commission and was deceived.  Buy Rite, Johnson, and Freemyer admit that the Debt was incurred through willful, malicious, deliberate, and intentional injury by Buy Rite, Johnson, and Freemyer to WBA and property of WBA as contemplated by § 523(a)(6).  Buy Rite, Johnson, and Freemyer admit as true all facts and allegations in Counts VIII and IX of the Complaint, and incorporate them by reference herein.  All facts and statements made in this paragraph and preceding paragraph shall be taken as true in any subsequent action, litigation or adversary proceeding between the Parties to this Settlement Agrement only in bankruptcy court and actions related thereto without further proof.  These admissions are factual and not merely legal conclusions.  In addition, Buy Rite, Johnson, and Freemyer admit that sufficient factual admissions exist to deem the Debt nondischargeable in bankruptcy or similar proceeding subject to review and determination by a bankruptcy court.  Given the foregoing factual admissions, Buy Rite, Johnson, and Freemyer further acknowledge that any attempt to pay less than the full amount of the Debt in a Chapter 13 bankruptcy would constitute a bad faith Chapter 13 Plan, and that this acknowledgment may be used by WBA to object to confirmation of any Chapter 13 Plan. . . . Counsel for Buy Rite, Johnson, Freemyer, Vikkee Johnson, and Carolyn Freemyer opines and represents that the foregoing language is sufficient to make the Debt nondischargeable.

Settlement Agreement, pp. 3-4, Para. 3.  The parties to the Settlement Agreement further agreed that the "Settlement Agreement was not entered into or executed under any duress or coercion

whatsoever . . .." Id. at p. 9, Para. 19.

      7.     On or about January 2, 2002, the Court entered a Stipulated Judgment in the State Court Suit, which Judgment was agreed to by Buy Rite and the Debtor, among other Defendants (the "Judgment").  In the Judgment, the State Court approved the Settlement Agreement, and incorporated it by reference, although it was not attached to the Stipulated Judgment for reasons of confidentiality.

      8.     The Judgment was never appealed by the Debtor or any other party.  Until this proceeding, the Debtor had never challenged the Judgment, directly or indirectly.

      9.     The Debtor filed the petition commencing this bankruptcy case in El Paso, Texas, on August 19, 2005.  It was filed as a "no asset" Chapter 7 case, and the notice sent to creditors instructed them not to file any proof of claim unless subsequently notified.  There has been no such subsequent notification.

      10.    The Bank timely filed its Complaint initiating this adversary proceeding on November 3, 2005.

      11.    The Debtor's Schedules show his liability to the Bank as undisputed, noncontingent and liquidated.

### Plaintiff's Causes of Action

      1.     The court finds and concludes that the doctrines of collateral estoppel (issue preclusion) and Rooker-Feldman are applicable to the facts of this bankruptcy case and adversary proceeding.  *See generally* **Grogan v. Garner**, 498 U.S. 279, 284 n.11 (collateral estoppel applies to § 523(a) dischargeability cases); **Catz v. Chalker**, 142 F.3d 279, 293 (6th Cir.1998) (Rooker-Feldman Doctrine precludes review of a state court determination finding facts supporting nondischargeability); *accord,* **In re Putvin**, 332 B.R. 619, 624 (10th Cir. BAP 2005)**; In re Limieux**, 306 B.R. 433, 441-42 (Bankr. D. Mass. 2004).  Rooker-Feldman Doctrine applies in bankruptcy matters when the state and federal claims are "inextricably intertwined." **In re Erlewine**, 349 F.3d 205, 209 (5th Cir. 2003).  "A federal and state claim are inextricably intertwined if 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" **In re Stoddard**, 248 B.R. 111, 121 (Bankr. N.D. Ohio 2000), quoting **Catz v. Chalker**, *supra.*  The court finds and concludes that the dischargeability claims litigated

in this adversary proceeding are inextricably intertwined with those litigated and determined in the State Court Suit.

      2.     The Judgment incorporating the Settlement Agreement establishes all of the elements of the Bank's causes of action under 11 U.S.C. § 523(a)(2)(A) and (a)(6).

      In Paragraph 8 of the Judgment the provisions of the Settlement Agreement were expressly approved and incorporated.  Paragraph 3 of the Settlement Agreement contains some general admissions of the Debtor and others, of:

> liability to WBA and causing damages and loss to WBA of WBA's property . . .
> in the amount of the Debt resulting directly from their commission of false
> pretenses, false representations, actual fraud and conversion and willful and
> malicious injury to WBA's property

and admissions that:

> the Debt was incurred and obtained by their knowing, fraudulent, bad faith, and
> positive commission of false pretenses, false representations, and actual fraud
> with intent to deceive WBA as contemplated by 11 U.S.C. § 523(a)(2)(A) and
> admit that WBA justifiably relied on that commission and was deceived [and] that
> the Debt was incurred through willful, malicious, deliberate, and intentional injury
> by Buy Rite, Johnson, and Freemyer to WBA and property of WBA as
> contemplated by § 523(a)(6).

In addition, the Debtor made some other, very specific factual admissions in the Settlement Agreement.  In particular, the Debtor expressly admitted "as true all facts and allegations in Counts VIII and IX of the Complaint, and incorporate[d] them by reference herein."  *See* Settlement Agreement, Para. 3, quoted above.  Counts VIII and IX of the Complaint incorporated other paragraphs of the Complaint that contained very specific factual allegations.  *See* Complaint, Para. 53, 59.  In particular, the Bank's Complaint in the State Court Suit alleged that the defendants, including the Debtor, had obtained original titles from the Bank without paying for them.  See Complaint, Para. 23.  The Bank also alleged that the Debtor had obtained duplicate original titles from the Department of Motor Vehicles and then sold them to third parties without submitting payment to the Bank for the vehicles which the Bank had financed. Id. at Para. 24(B).  The allegations also included claims that the Debtor was involved in accepting trade-ins from customers and not paying off the loans held by third parties, including the Bank.  Id. at Para. 24(C).  Another of the Bank's allegations was that the defendants committed fraud on it by putting vehicles not owned by Buy Rite on its lot to deceive the Bank.

Id. at Para. 24(D).  Finally, the Bank also alleged that the Debtor was involved in conspiring with n employee of the Bank to obtain titles without paying the Bank, and that such conspiracy involved the payment of bribes to the Bank's employee.  Id. at Para. 24(E).

The court finds that the Debtor's explicit admission of all of these facts, taken together with his other admissions in Paragraph 3 of the Settlement Agreement, establish all of the elements of § 523(a)(2)(A) and (a)(6).  The elements under § 523(a)(2)(A) of nondischargeability because of fraud are: (1) a misrepresentation made by the debtor; (2) knowledge of the debtor that the representation was false; (3) intent of the debtor to deceive the creditor by making the misrepresentation; (4) actual and justifiable reliance by the creditor on the representation; and (5) loss to the creditor proximately caused by its reliance.  **In re Acosta**, 406 F.3dd 367, 372 (5th Cir. 2005).  With respect to § 523(a)(6), the Bank specifically alleged, and the Debtor admitted, that his acts caused willful and malicious injury to the Bank and its property.  State Court Complaint, Para. 56; Settlement Agreement, Para. 3.  Moreover, the Fifth Circuit Court of Appeals has recognized that out of trust sales of floor planned items constitute a willful and malicious injury. **In re Theroux**, 49 F3d 728 (5th Cir. 1995) ("Acting in a manner which one knows will place a lender at risk, such as converting property in which the lender holds a security interest, is sufficient to permit a trier of fact to infer malice under Section 523(a)(6)."), citing **Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.**, 783 F2d 480 (5th Cir. 1986), **Chrysler Credit Corp. v. Fidelity Bank v Higginbotham**, 117 B.R. 211, 216 (Bankr. E.D. Va. 1990), and **In re Tarrant**, 84 B.R. 831 (Bankr. M.D. Fla. 1988).  The Debtor here has admitted to the out of trust sales by Buy Rite Motors, and has presented no facts which would support a meritorious defense to the inference of malice to which the Fifth Circuit Court of Appeals refers.

The Debtor argues that because it is a consent judgment, the Judgment cannot be given preclusive effect.  However, Paragraph 3 of the Settlement Agreement clearly and unequivocally shows that the parties intended that, by having the State Court incorporate the Settlement Agreement in the Judgment, the factual admissions made by Buy Rite Motors, the Debtor, and Freemyer in the Settlement Agreement would be given preclusive effect in any future litigation such as the instant proceeding.  Where the parties so intend, a consent judgment will be given preclusive effect.  *See* **Pope v. The Gap, Inc.**, 961 P.2d 1283, 1291-92 (N.M. App. 1998) ("one exception to the rule that a consent judgment is not to be given preclusive effect is where the

parties have entered into an agreement manifesting an intention to be collaterally bound by the terms of the judgment, and the intention of the parties is expressed in the terms of the judgment"); *see also* **Hughes v. Santa Fe International Corporation**, 847 F.2d 239, 241 (5th Cir. 1988) ("consent judgments will be given preclusive effect if the parties manifest such an intention").  In **Kaspar Wire Works, Inc. v. Leco Eng'g and Machine, Inc.**, 575 F.2d 530, 539 (5th Cir.1978), the Court of Appeals opined that

> [a consent] judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such intention. . . . Consequently, a consent decree is neither ignored nor treated solely as a contract, although, in considering the finality to be given it, the fact that it originated as a negotiated settlement is considered. Whatever type of repose is sought to be invoked as a result of a judicial consent decree, a court should take into account the fact that it was rendered by consent and determine its impact by the issues actually intended to be precluded by the parties.

Even under that jurisprudence in which a critical factor appears to be whether the consent agreement spelled out factual findings in sufficient detail, the Judgment in this case, which incorporated and approved the detailed factual admissions in the Settlement Agreement, is sufficiently detailed and clear in its intent that the court finds that it should be given preclusive effect.

Having found that the Bank has established that no genuine issue of material fact exists with respect to its causes of action under § 523(a)(2)(A) and (a)(6), the court now addresses the Debtor's contention that genuine issues of material fact exist as to its affirmative defense of duress that would preclude the Bank from obtaining relief.

### The Debtor's Affirmative Defense of Duress

The Debtor argues that he was coerced into signing off on the Settlement Agreement and agreeing to the entry of the Judgment, and that it therefore should not be given preclusive effect by this court.  He contends that the Bank made threats of criminal prosecution that forced him to concede to its demands, resulting in the entry of the Judgment.  The Rooker-Feldman Doctrine, however, prevents this court from "reversing" or "voiding" the Judgment, which is final and has never been appealed or challenged in the State Court.  Moreover, New Mexico has a state court civil procedural rule, Rule 1-060(B), which is patterned after Federal Rule of Civil Procedure 60(b).  This Rule provides that certain actions attacking judgments may be brought after the

normal times for appeal or for filing a motion for new trial.  Generally, "[s]uch motions are to be filed in the original cause of action in the same court to which the challenged judgment was rendered and may not be relied upon to launch a collateral attack in a different cause of action or a different court." *See* **Sanders v. Estate of Sanders,** 927 P.2d 23, 29 (N.M. App. 1996).

In addition, however, Rule 1-060(b) expressly allows for independent actions by litigants for relief from judgment.  The Rule:

> does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela and bills of review and bills in the nature of a bill of review, are abolished, and the proceeding for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

N.M.R.Civ.P. 1-060(b)(6).  In this regard, New Mexico law is similar to the Bill of Review equitable proceeding in Texas courts.  *See generally* **King Ranch, Inc. v. Chapman, III**, 118 S.W.3d 742 (Tex. 2003).[2]

"Parties filing an independent action for relief from a judgment would bear a heavy burden to allege and provide evidence of five elements: (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) *a good defense to the alleged cause of action on*

---

[2] In Texas,

> [a] bill of review is an equitable proceeding to set aside a judgment that is not void on the face of the record but is no longer appealable or subject to a motion for new trial. . . .  A bill of review is proper where a party has exercised due diligence to prosecute all adequate legal remedies against a former judgment, and at the time the bill of review is filed, there remains no such adequate legal remedy still available because, through no fault of the bill's proponent, fraud, accident, or mistake precludes presentation of a meritorious claim or defense. . . . *The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point.* . . .  Thus a bill of review petitioner must ordinarily plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that the petitioner was prevented from making by the fraud, accident or wrongful act of his or her opponent, and (3) the petitioner was not negligent."

**King Ranch, Inc. v. Chapman, III**, 118 S.W.3d 742, 751 (Tex. 2003) (emphasis added and citations omitted).

*which the judgment is founded;* (3) fraud, accident or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law. **Sanders**, 927 P.2d at 27 (emphasis added).

No Rule 60(b) motion has ever been filed by the Debtor in the State Court to seek any relief from the Judgment during the more than four and a half years that have passed since its entry. Nor has he commenced any independent equity action during that time to seek relief in the State Court from the Judgment.

However, this court need not decide whether the Debtor may challenge the Judgment at this late date, nor whether his having consented, under duress, to the entry of an agreed judgment–as opposed to a contract (to which the Debtor's sole authority on the issue is limited)– is an exception to the application of collateral estoppel under New Mexico law. The court need not address those issues because the Debtor in this case has failed to present summary judgment evidence establishing a genuine issue of material fact on the issue of duress.

First, the undisputed evidence is that the criminal complaint was filed *prior* to any civil action being commenced and was long pending when the Judgment was agreed to by the Debtor. Similarly, Exhibit D-5 offered by the Debtor is dated long before the Judgment was entered, and long after the criminal complaint was filed. There is no date on exhibit D, but its content shows clearly that it was created after the criminal complaint was filed. Exhibit D-7 offered by the Debtor is dated June 1, 2001, after the criminal complaint was filed. In contrast to all this evidence, the authorities on this issue–even those cited by the Debtor–speak only of "threats to *instigate* criminal prosecution"–i.e., to take action *in the future. See* Farnsworth on Contracts § 4.17 (1990), as quoted on p. 15 of Defendant's Response to Plaintiff's Motion for Summary Judgment. The distinction is logical and critical–in contrast to *filing* a complaint that initiates a criminal investigation–a unilateral action under the control of the filer– the decision to continue or dismiss a pending criminal investigation or proceeding is not the complainant's (here, the Bank), but rather belongs to the State's attorneys' who handle criminal complaints.

Further, there is no evidence that the conversation between the Bank's officers and the D.A.'s office referred to in Exhibit 6, or any other contact between the two, was ever made known to the Debtor prior to the execution of the Settlement Agreement and the entry of the

Judgment.  The *only* evidence the Debtor offers in support of his frame of mind–i.e., his sense of having been coerced into agreeing to the Settlement Agreement and Judgment–is his affidavit testimony, but that testimony does not even *suggest* that *any* promise was *ever* made to the Debtor that the criminal complaint would somehow "go away" only if he entered into the Settlement Agreement and agreed to entry of the Judgment.  Rather, his exact words show that any connection between a settlement of the civil action and a disposition of his criminal problems was merely wishful thinking on his part: "I entered into the Settlement Agreement and Stipulated Judgment *solely in hopes* that Western Bank-Alamogordo would drop the criminal charges . . .." (Emphasis added.)

Moreover, it is undisputed that the Debtor was represented by counsel throughout the prosecution of the State Court Suit.  The correspondence between the parties' counsel, which is offered by the Bank as part of its summary judgment evidence, shows that that representation was vigorous, and appears to show that nondischargeability of the debt to the Bank was offered by the Debtor's attorney as an incentive to settle and was not insisted upon by the Bank's counsel.  Further, that correspondence also shows that there were a number of other issues that appear to have been material and of importance to the Debtor in deciding to settle the State Court Suit, not the least of which was his desire to have his wife dismissed from the case.  She was in fact dismissed as a part of the consideration for the Settlement Agreement, as indicated in Paragraph 6 therein.

In the absence of any other evidence on the issue, the court finds and concludes that the Debtor has failed to present sufficient evidence to raise a genuine issue with respect to a defense of duress.

### The Amount of the Claim

The Bank in its Complaint has not requested this court to determine the current balance of the debt represented by the Judgment.  While the Debtor in his Response to the Motion for Summary Judgment makes a request that the court allow the claim only in the amount set forth on Debtor's schedules, the court declines to do so, in the absence of any moving paper requesting that relief and inasmuch as the determination is not material to this proceeding.

## **Conclusion**

For the foregoing reasons, a judgment of even date herewith shall be entered granting the summary judgment request of Western Bank-Alamogordo, and providing that the debt evidenced by the Stipulated Judgment entered in the State Court Suit is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6), without prejudice to the right of the Debtor to seek direct or independent relief from the State Court from the Judgment itself.

# # #